<div style="margin-left:auto; text-align:right; font-style:italic;">NORTHERN<br>v.<br>WILLIAMS.</div>

---

## R. C. STOCKTON v. R. C. DOWNEY.

To constitute a valid seizure of tangible property, under an attachment, the sheriff must seize and take into actual possession, the property seized. The return of the writ must show the manner in which it has been executed. It is not sufficient, for the sheriff to return, that he has attached according to law.

The recordation of an attachment, in the office of recorder of mortgages, has no legal effect.

Judicial sales ought not to be annulled, unless at the instance of a party who has a right to sue for their rescission, and who can show an injury resulting to him from the sales; and without a previous proffer of full indemnity to the *bonâ fide* parties, whose interests are to be affected by the judgment.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *A. Steele*, for plaintiff. *Benjamin* and *Micou*, for defendant. The judgment of the court was pronounced by

EUSTIS, C. J. On the 6th day of July, 1849, *Stockton* sued *Downey*, claiming certain lots of land described in the petition, to be sold by the sheriff, to satisfy a writ of *fieri facias* in the case of *Stockton* v. *Craddick*.

STOCKTON
v.
DOWNEY.

He alleged, as the ground of action, that on the 12th and 19th days of January, 1841, he had brought two suits against *Craddick*, in the Commercial Court of New Orleans; and had attached, as *Craddick's* property,. the lots in question, with other lots; that he recorded the attachments and sheriff's returns in the mortgage office, on the said days; that said two suits were consolidated by order of the court; that, after due proceedings had therein, he had obtained judgment against *Craddick*, with privilege upon the property in question, for $13,416 67, with interest from the date of attachment, and costs; that under a *fieri facias*, issued in said suit, he had caused all the property which had been attached therein, except the lots now claimed to be sold, which produced only $3700, leaving a large balance still unpaid, the amount of which is definitely set forth; and that, during the litigation between *Stockton* and *Craddick*, *Downey* had illegally possessed himself of the property : he prays, that the lots be ordered to be surrendered, to satisfy the balance of said debt and judgment.

*Downey* filed his answer, admitting possession, and alleging that he held as tenant from *Samuel C. Harrison*. *Harrison* answered and alleged, that the lots claimed by *Stockton* once belonged to *Joshua J. Hall*; that on the 12th April, 1839, they were mortgaged by *Hall*, to the Firemen's Insurance Company, with a clause prohibiting the alienation of the property; that *Hall*, having failed to pay the mortgage debt, the insurance company took out executory process from the Parish Court of New Orleans; under which the lots in question were sold, on the 13th October, 1841, to *Sarah Connelly*, on twelve months' credit; that, after the bond of *Sarah Connelly* fell due, execution was taken out thereon, and the property again sold, on the 12th December, 1842, to *Edward Biggs*, who sold the same to defendant.

Upon the trial, the plaintiff traced the titles to the lots in controversy from *J. J. Hall* (from whom both parties claim) to *Craddick*, by means of the following conveyances, all by notarial act, and duly recorded at the time of their several dates: 1st. Act from *Joshua J. Hall* to *C. C. Hall*, dated July 25th, 1839; 2d. Act from *C. C. Hall* to *Robert Mott*, dated November 21st, 1839; 3d. Act from *Robert Mott* to *Craddick*, dated July 14th, 1840. Each of these acts conveys the property in controversy. Plaintiff then offered in evidence parts of the record in the case of *Stockton* v. *Craddick*, by which he attempted to show that the lots in controversy were attached on the 12th and 19th days of January, 1841; that upon the said attachments a judgment was rendered against the property, for $13,416 67, with interest from 12th and 19th January, 1841, and costs, with privilege on the property attached; that all the other property attached, except the lots now sued for, were sold, and brought at sheriff's sale, only $3700. The admission of defendant showed, that the attachments were recorded in the mortgage office.

The defendant, *Harrison*, then offered in evidence, the copy of the record of a suit, by executory process, in the parish court, wherein the Firemen's Insurance Company were plaintiffs, and *J. J. Hall* was defendant. By this record it appears, that a petition was presented to the late Parish Court of New Orleans, by the Firemen's Insurance Company, praying for an order of seizure and sale against the lots in controversy, as the property of *J. J. Hall*. With this petition, were also presented the note and protest and mortgage made by *J. J. Hall* to the Firemen's Insurance Company. The mortgage contains the clause *de non alienando ;* but that clause is not contained in the abstract recorded in the mortgage office.

Under an order for executory process, issued on this petition, a writ of seizure and sale was issued from the parish court; and under this writ, the lots in dispute were sold by the sheriff, and passed to the defendant, under the several conveyances mentioned in his answer. In the court of the first instance, this case was tried on the conflicting claims of the plaintiff, and under his writs of attachment; and the defendant, under his titles, as stated. The district judge determined in favor of the validity of the latter, and gave judgment for the defendant. The plaintiff has appealed.

The defendant stands before us as a *bonâ fide* purchaser, without notice, unless he can be held to constructive notice, resulting from the plaintiff's attachment. An objection has been made, that there was no attachment of the lots; and that this is apparent from the sheriff's return; which is the only evidence, except the judgments in the suits, on which the legality and validity of the attachments can be tested.

The judgments, to the satisfaction of which the plaintiff seeks to subject the property in dispute, are rendered against *Craddick*, " with privilege on the property attached." The copies offered in evidence do not give their date; nor is there any evidence to fix the day on which they were rendered. The plaintiff has not shown, that the judgments were rendered previous to the sheriff's sale to *Sarah Connelly*, which was made on the 13th of October, 1841; which he was bound to do, to enable himself to derive any advantage from the judgments adversely to the defendant. An examination of the originals has relieved us from any consequences resulting from this view of the facts; they both bear date the 7th of February, 1842. So that the plaintiff's case rests solely on the effect of the attachments, as established by the return of the sheriff. The defendant, and those under whom he claims, were neither parties nor privies to the judgments.

By the writs of attachment, the sheriff is commanded to seize and attach according to law, and to take into his possession, the goods and chattels, lands and tenements, rights, monies, effects and credits of the said *Joseph N. Craddick*, etc.; and to make return of these writs, and to endorse thereon the manner he will have executed them. The only compliance with this precept appears by the sheriff's return. On each writ he states, that he received the writs, and attached the following described property pointed out by the plaintiff; to wit, a certain lot of ground, etc. The lots in dispute are included among those described; and the return concludes : " Served notice of this attachment on *P. Landreaux, Esq.*, recorder of mortgages, and as herein stated; the defendant residing out of the State of Louisiana. I posted citation and attachment to the door of the church of St. Louis, of New Orleans, in New Orleans, and to that of the room in which this court is held; and executed this writ in all things as the law directs. Returned 15th February, 1841."

It does not appear, that the lots in dispute were vacant and unimproved; on the contrary, the return states that they were attached, with the buildings and improvements thereon; and it appears, that they were pointed out to the sheriff, by the plaintiff; and from the whole complexion of the return, it does not appear to have been made unadvisedly, nor that its defects were matters of mere neglect on the part of the officer. Why was notice of the attachment served on the recorder of mortgages? So unusual a mode of serving an attachment could only have been under the orders of a vigilant superintendence. In this return, we find a complete omission to comply with the requisitions of the writ, so far as relates to the property attached; and it has every appearance of an

attempt to avoid the responsibility of a disturbance of the possession of the defendant, the consequences of which would be thrown on the plaintiff and his security on the attachment bond.

By the return, it does not appear that any seizure of the lots was made, or that any change of possession, real or symbolic, was even attempted. No notice was given to the tenants to attorn; no act of possession or custody was done in relation to the property by the sheriff, or any one for him. Under this state of facts, and previous to the rendition of the judgments, the sale to *Sarah Connelly* was made, under which the defendant holds; and the question is presented, whether there was, in fact, any attachment of the lots in dispute at the time of this sale.

It clearly results from our attachment laws, that, in cases in which there is no garnishment, the actual seizure of the property of the debtor is alone the basis of the attachment, and of the jurisdiction of the court. C. P. art. 239, *et seq.*, 256, 257. The sheriff must not only take charge of, and keep possession of, the property attached, but he must make his return in writing, stating the manner in which he has executed the writ of attachment. If the attachment be wrongfully obtained, the debtor is to be indemnified for the unlawful seizure of his property, in the bond given by the plaintiff. The requisition of the bond, by the law, presupposes the injury to the debtor, by the seizure of his property; and provides for his indemnity against it. The return does not state the manner in which the writ was executed; which the writ itself, as well as the law, commanded the sheriff to state. The use of the word *attach* in the return, is no compliance with this requisition. It was the duty of the sheriff, in his return, to give his doings under the writ; so that the court could judge of their sufficiency, and whether they created a valid attachment, on which the court was authorized to proceed to judgment in the case. The conclusion of the sheriff, that he attached, is not to be heeded; as he is not the judge of the fact.

The return is defined to be nothing else than the answer of the sheriff, touching that which he is commanded to do by the writ; and its object is, to inform the court of the truth of the thing. Dalton, who gives this definition in his work on Sheriffs, p. 162, remarks, that the return is the most difficult thing belonging to the sheriff's office; for the sheriff must be very careful and circumspect in making these returns according to law, both for substance and form; otherwise, he shall not only endanger himself to be amerced and sued for the same, but he shall endamage the parties, and may hazard the suit itself.

Every return ought to answer the point of the writ, and the whole writ. It ought to be certain to every intent according to a reasonable intendment and construction. It must state the facts truly, and must not be argumentative. Gwinne on Sheriffs, 453. Sewell on Sheriffs, 386. A return on which the sheriff stated his opinion of the law of a constructive custody, was quashed and not allowed to be amended. Sewell on Sheriffs, 386.

We do not think, that the conclusion to the returns, "and executed this writ in all things as the law directs," remedies the defects in the body of the return. It gives the opinion of the sheriff in general terms on his own acts, and is liable to all the objections made to all the other parts of the return.

We have held in several cases, that to make a valid seizure of tangible property under a *fieri facias*, the thing levied upon must be taken possession of by the officers. *Fluker* v. *Bullard*, 2d Ann. 338. *Galbraith* v. *Snyder*, Ib. 492. *Offat* v. *Monguit*, Ib. 785. *Taylor* v. *Stone*, Ib. 910. *Gaines* v. *Merchants' Bank*, 4th Ann. 371. We therefore conclude, that the proceedings under

<div style="float:right">STOCKTON<br>v.<br>DOWNEY.</div>

the writ of attachment in relation to these lots, constituted no impediment whatever to their being sold at the instance of the mortgage creditor, and that the plaintiff has no right, by reason of the attachments, to call in question the validity of the title under which the defendant claims.

We have always held the proceedings under our foreign attachment laws, as matters *stricti juris*. We think the action of our courts can only be based on the presence of property of the debtor within their jurisdiction, subjected to its process by garnishment, or a real taking into possession ; and that it would not be proper or lawful, to admit a mere fictitious and constructive seizure of the property of the absentee, to be the foundation of judicial proceedings against him. We do not think it necessary to inquire into the regularity of the proceedings of the Parish Court of New Orleans, under which the sale, of the lots was made. Supposing that the plaintiff is a creditor, and even a judgment creditor of *Craddick*, on the case before us, he has no right to disturb this sale. The mortgage debt has been paid, and the debtor acquiesces in the payment. The amount due on the mortgage debt was paid by the defendant himself, who purchased at the sheriff's sale for account of another person. After satisfying the debt, the balance of the purchase money was paid over to the debtor *Craddick*, who was the defendant in the suit. On what principle this sale can be disturbed by the plaintiff, we cannot understand. Such a result, in a court of justice, would seem to be mere wantonness. The reality of the mortgage debt is not questioned ; it has been paid, the debtor consenting thereto. Where is the injury to the plaintiff, resulting from this payment? Why rip up all these affairs, when there is no evidence before us which shows that, even if the plaintiff had any right to insist on their being annulled, the least benefit could result to him thereby ? Suppose, on a re-sale, the property were not to bring the amount of the debt, who is to make good the loss to the mortgage creditor? We do not think that judicial sales ought to be disturbed, unless at the instance of a party who has a right to sue for their rescission or nullity, and who can show an injury resulting to him from the sale, as well as an interest in the result of the suit, and without a previous proffer of full indemnity to the *bonâ fide* parties, whose interests are to be affected by the judgment. *Coiron* v. *Millaudon*, 3d Ann. 668. *Seawell* v. *Payne*, 5th Ann. 260. *Chretien* v. *Richardson*, Ib.

The judgment of the district court is therefore affirmed, with costs.

---

## SAME CASE—ON A RE-HEARING.

THE judgment of the court, on a re-hearing, was pronounced by

EUSTIS, C. J. There is an error of fact in the opinion of the court, which the counsel for the plaintiff has pointed out, which requires correction. Towards the end of the opinion it is stated, that "after satisfying the debt, the balance of the purchase money was paid over to the debtor *Craddick*, who was the defendant in the suit." The return states, the balance to have been paid over to the defendant. The defendant alluded to, was not *Craddick*, the original defendant in the suit, but *Sarah Connelly*, one of the defendants in the execution, which was issued on a twelve months' bond against said *Connelly* and *John Duggan*.

This mistake does not, in the slightest manner, affect the principles on which the opinion is based, and is not material, so far as relates to the result. But we deem it proper to have it corrected. Re-hearing refused.