No. 6317.

## JOSEPH JOUET VS. MRS. E. F. MORTIMER.

The signing by the sheriff (or his deputy) of the notice of demand made on the defendant in executory proceedings, is an irregularity which can only be availed of by the defendant, by pleading it *before* the sale of the mortgaged property.

The notice of the sale, in executory proceedings, need only be published three times during the thirty days delay.

Jouet vs. Mrs. E. F. Mortimer.

The benefit of the appraisement of his property, may be legally waived by the mort-
gage debtor.
The validity of a sheriff's deed is not affected by the fact that the accrued taxes on
the property conveyed by the deed, had not been paid.
The nullity of a judgment, or of a judicial sale, can only be demanded by one, who
has used due diligence to prevent, what he seeks to annul.
The adjudication of the property by the sheriff, and the payment of the price invest
the purchaser with the legal title. The deed of the sheriff is merely evidence of
the fact.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch,*
J.

*Sambola & Ducros,* for plaintiff and appellant.

*J. L. Tissot,* for defendant.

The opinion of the court was delivered by

DeBlanc, J. More than eight years ago, on the eighth of March, 1869,
Joseph Jouet, the plaintiff, appeared before a notary public of this city
and acknowledged that he was indebted unto Louis Florval Givins in
the sum of five thousand dollars, for which he delivered three notes
drawn by him to his own order and by him indorsed, two, each for two
thousand dollars, the other for one thousand dollars, payable on the
eighth of March, 1870.

To secure the payment of these notes, the interest thereon stipulated,
and, in case of a suit thereon, the attorney's fees, Jouet gave a mort-
gage on a lot of ground and the improvements attached to the same.
In that act he waived his right to have said property appraised, if seized
to satisfy the aforesaid notes and mortgage.

Two of the notes then drawn, indorsed, and delivered by plaintiff
passed into the hands of Mrs. Mortimer. She was certainly not a hard
creditor, for she proceeded against plaintiff only when there was no
hope that he would comply with his obligations.

On the twenty-second day of May, 1874, more than four years after
the maturity of the notes—tired, as she was, of promises often made
and as often violated—she applied for the seizure and sale of the mort-
gaged property. The order was granted, the property seized, advertised
for sale, and, on the sixth of July, 1874, adjudicated to her for three
thousand four hundred dollars.

After that sale, plaintiff asked Mr. Tissot to rent said property for
him from Mrs. Mortimer, or Charles Lafitte, her agent; that he would
pay twenty-five dollars a month for the portion occupied by him. Mr.
Tissot complied with his request, but those parties declined renting to
him. He then threatened to go into bankruptcy, and executed his threat.

On the eleventh of September, 1874, more than two months after the
property had been adjudicated to Mrs. Mortimer, plaintiff sued out an
injunction, in which he prays —

First—That the sheriff of the parish of Orleans and Mrs. Mortimer be

prohibited from molesting or interfering with the possession of the property adjudicated by the former to the latter on the sixth of July, 1874.

Second—That said sheriff be prohibited from making out or completing defendant's title to said property.

Third—That the adjudication of the sixth of July, 1874, from the sheriff to Mrs. Mortimer be avoided and annulled, and she condemned to pay to plaintiff, as damages, the sum of one thousand dollars.

That injunction is based on the grounds —

First—That Mrs. Mortimer had agreed to suspend her execution against him, and to allow him one additional year, or so much time as might suit him, to pay the notes sued upon, on condition that he should satisfy the taxes due on the property and the necessary interest for that purpose.

Second—That defendant violated her promise, deceived him, had the property sold in disregard of their agreement, and should not be permitted to so take advantage of her own wrong and profit by the frightful sacrifice of his residence.

Third—That the notice of demand served upon him is informal, not having been signed by the clerk of the district court.

Fourth—That instead of being advertised once a week, as required by law, the sale of said property was advertised only three times in the official paper.

Fifth—That said property was offered for sale and sold without being appraised.

Sixth—That the State, parish, and municipal taxes due on the lot of ground and improvements so adjudicated have not been paid.

First—Defendant has signally failed to prove any agreement on the part of Mrs. Mortimer to suspend her execution, or extend, as by him alleged, the long-since expired term of his obligations. Placed on the stand as a witness in his own behalf, he said: " I was not present at the sale of my property, and was very much astonished to learn that it had been sold. After I received notice of her judgment, I saw Mrs. Mortimer; she told me that if I could pay the interest and a part of the taxes she would do all in her power to extend the time. I then offered the rent which would be due at the end of the month by two of my tenants; that was forty dollars. Mrs. Mortimer gave me no answer, but she was pleased with the arrangement, and invited me to go and see Mr. Tissot, her attorney. I did. He told me to settle my taxes, and he would give me as much time as I required to pay the interest. I was satisfied that the matter was entirely settled. I looked in the paper to find out whether my property was advertised for sale. It was not. There remained due of the interest, which was payable in advance, two hundred dollars; for

that I offered Mrs. Mortimer the monthly rent of forty dollars. I did not waive, as I know, my right to have the property appraised. The property, when sold, was worth eight thousand dollars, and mortgaged for six thousand dollars."

Cross-examined, he said: "The conversation between me and Mrs. Mortimer took place a few days after or the day after I saw in the paper the advertisement that my property was to be sold, and again a few days later. This was between the first and tenth of May. I was in the way to collect money to pay the taxes, and I could, but did not, pay them."

Mrs. Mortimer testified in substance as follows: "Plaintiff came to my house to ask me to stop the sale and grant him time to pay my notes. I told him I had waited long enough and could not wait any longer. I think it was in June that Mr. Jouet called; his property was then under seizure. I told him I would listen to him after he had paid all the back taxes, back interest, and one of the notes. Mr. Buisson was then present."

Mr. E. Buisson fully corroborates Mrs. Mortimer's declaration. In addition to it, he said: "When Jouet offered a certain amount on the interest due, that lady exclaimed: 'Why, the first time you offered me more than that.' He replied, 'I did; I had it then; I have it not to-day.'"

Plaintiff's own declaration does not establish that Mrs. Mortimer agreed to suspend her execution and postpone the payment of the note she held, but it does establish that if, as pretended, she made a proposition to plaintiff, or he to her, he has not complied with any of the conditions fixed or accepted by them. He has paid neither the interest nor the taxes.

Second—The charge that Mrs. Mortimer has broken her agreement, deceived plaintiff, and that she should not be permitted to take advantage of her own wrong, and profit by the frightful sacrifice of his property, is as unfounded as the first. She was guilty of no wrong, resorted to no deceit, pursued the course indicated by law, purchased at public auction property on which she had a mortgage, and for that property paid a price equal to its value. That is sworn to by Messrs. Charles Lafitte and E. W. Murphy, two disinterested witnesses.

Third—The third ground urged by plaintiff to annul the sale to Mrs. Mortimer is that it was a deputy sheriff who signed the notice of demand served upon him. This, as we have already decided, constitutes an irregularity. That notice should have been given by the clerk of the court or one of his deputies. But is it one of those irregularities which can be complained of more than two months after the sale? Could plaintiff fold his arms, wait until the purchaser had paid taxes amounting to

hundreds of dollars, and then, without tendering back any fraction of these taxes, assail the purchaser's title? In our opinion he could not.

Fourth—As to the advertisement of the sale, what fact is disclosed by the evidence? De Armas, deputy sheriff, said: "The notice of the sale was published three times in the official paper, from the second of June to the sixth of July. This for thirty-five years has been the custom in the office of the sheriff of the parish of Orleans."

What does the law provide? "The sale of immovables shall be made thirty days after the first notice given of the same." C. P. 670. In this case the notice was published during the prescribed delay. Plaintiff read the first advertisement. He knew that an execution had been issued; that under it his property had been seized; notice of said seizure was served on him; he knew that said execution had not been returned; and though he may have imagined that these proceedings had been suspended, he had no reason, not even a pretense, to so imagine, and had every reason to believe exactly the reverse.

The articles of the Civil Code relied upon by plaintiff's counsel have reference to the notice to be given of an application for the curatorship of a vacant estate, and of sales of property belonging to successions.

Fifth—On the trial plaintiff was asked: "Have you ever waived your right to have the property appraised?" He answered "No, not as I know." This answer contradicts the declaration made by him in the act of mortgage, and which we here transcribe: "The said mortgager expressly dispenses with all and every appraisement of the property, waives and renounces the benefit of appraisement, and of all laws or parts of laws relative to the appraisement of movable or immovable effects seized and sold under executory or other legal process."

In the nineteenth Annual, page eighty-nine, the court said: "The only question presented in this appeal is whether the clause in the act of mortgage, dispensing with the appraisement of the property, is valid in law. The same point was presented in the case of Broadwell vs. Rodriguez, and, after full discussion by counsel, and mature deliberation by the court, it was held that such a claim is legal and valid, and we find no reason to change our opinion." 19 An. p. 89; 18 An. p. 68.

Sixth—The law provides that "the sheriff of the parish of Orleans shall not pass or execute any act for the sale of any real estate unless the taxes due on the same be first paid. If he does, he shall be fined." This provision only enlarges the legislation which existed on the same subject, and which required every notary, before passing an act of sale, mortgage, or donation, to obtain from the recorder of mortgages a certificate showing the rights existing against the property, and to mention those rights in his act.

The law, however, does not pronounce the nullity of any contract evi-

·denced by an act passed in derogation of those enactments, and, more particularly, of an adjudication of property sold under execution, for the sheriff can not tell the purchaser, "You are the last bidder; come forward and pay the taxes, or else I shall withhold the adjudication." He is bound to first adjudicate, and may suspend the completion, not of the title, but of the evidence of the title. Is this any concern of plaintiff's? Not only he does not pay his creditor, not only he compels that creditor to pay the taxes for which he is liable, but he assumes the right to oppose the execution of a deed from the sheriff to defendant until she satisfies a claim due by him to the State. Had the sheriff been disposed to disregard the law, the collector and not the delinquent taxpayer could have properly interfered.

We adhere to the doctrine that in forced alienations of property the law must be strictly complied with to give validity to those alienations; but many of the irregularities which may be relied upon to retard a sale can not be successfully urged to annul it; otherwise, as said by Mr. Justice Martin, in the case of Grant & Olden against Walden, "the floodgates of litigation would be uplifted, cupidity would be invited to repeated attacks, and the people would feel alarmed and insecure at the precariousness of judicial sales." The law has nearly lost its authority; the current of justice is nearly checked; and, howsoever disposed we are to respect and cause to be respected the forms prescribed by law, we consider it as the first duty of a court to discourage the reckless, the illegitimate litigation which—in our State—has rendered so difficult, so onerous, the exercise of the most indisputable rights.

In the cases cited by appellant's counsel we have found in one that the notice of demand was served on defendant's counsel, after the seizure, that the notes declared upon were prescribed; in the others that the judgment under which the sale was made had not been introduced in evidence, that there had been no appraisement made of the property, that the sale had not been advertised during thirty days, or that a sale had taken place when no seizure had been executed. It is evident that under such loose and defective proceedings no title was or could have been divested.

In the assailed proceedings there was but one informality; instead of being signed by the clerk, the notice of demand was signed and served by a deputy sheriff. Though informal, that previous demand was made. The debtor might have then and on that ground enjoined the execution. He did not do it, allowed the sale to be advertised, the property to be sold, after it was sold offered to rent it from the purchaser, and, sixty-four days after, filed an action to annul it. His only object was to obtain delay; he must be satisfied.

In opposition to plaintiff's authorities, as a bar to his pretensions, there

is a long list of decisions which command that no judicial sales shall be disturbed, unless by one who has the right to rescind or annul them, by one who can show injury to himself or an advantage to be gained by the cancellation of the sale.

The original plaintiff is now an adjudged bankrupt, represented by an assignee. The latter appeared in the State court, averred that it had lost its jurisdiction, and prayed for a transfer of this case to the Federal court. His application was denied; he excepted; but as he has not urged we presume he has abandoned his exception. From the judgment dissolving the injunction he has appealed.

In this case the order of seizure and sale was not, could not, be reached by plaintiff's injunction. Were we to annul the sale, that order would stand unaffected by our decree, and we would have but assisted plaintiff in harassing his creditor. Of ten debtors who take the benefit of the bankrupt act, five at least drag their creditors in the Federal court, to gratify their spite, to harass the creditor.

In regard to those who seek the nullity of judgments, what is the rule? It must appear that they have conformed to those essential requirements which equity exacts from litigants who invoke its aid. They must have used all reasonable diligence, and not neglected to use such means as they possessed to prevent the evil of which they complain. Are judicial sales exempted from the operation of that rule? They are not. 18 An. 497.

Immediately after the sale from the sheriff to Mrs. Mortimer, plaintiff applied to her to rent the portion of the premises which he then occupied, and which we presume he continues to occupy. Does not that application constitute a ratification? Is it less than a recognition of her title? It may be said that this is not sufficient to validate an invalid title; that as to immovables the evidence of the ratification should be reduced to writing.

In the eighth volume of his Commentaries, under No. 491, Toulier mentions two sorts of ratifications, the second of which is : " Celle par laquelle nous approuvons un contrat ou autre acte auquel nous avons concouru, ou auquel nous avons été appellés, mais qui était susceptible d'être attaqué pour des vices réels ou apparents, de nature à en faire prononcer la nullité ou rescision." This last sort of ratification is that provided for in our Code, and in one, as well as the others, " peut être faite expressément ou tacitement, verbalement, par écrit, ou par des actes qui manifestent clairement notre volonté, parfois même par le silence."

Several instances of express and tacit ratification are found in our jurisprudence, in which this court, in accordance with the principles recognized by Toulier, has uniformly decided that an act may be approved by implied or tacit ratification, though null and void *ab initio*. 10 M. 526 ; 7 L. R. 17; 4 R. R. 134.

Jouet vs. Mrs. E. F. Mortimer.

Out of the price of the property adjudicated to her, or out of her funds, and because of that adjudication, Mrs. Mortimer has paid a considerable amount of taxes due by plaintiff. Besides, in spite of the sale from the sheriff to her, and since that sale, plaintiff has had possession of the property in dispute. Can we, in presence of these facts, annul the defendant's title and legitimate plaintiff's possession?

On several occasions this court said, in substance: "Nothing could be more unjust than to permit a debtor to recover back his property, because the sale is irregular, and yet allow him to profit by that irregular sale, to discharge his debt. 11 M. R. 615; 3 N. S. 466; 4 L. 198; 19 L. 283; 2 R. R. 180; 5 R. R. 65; 6 R. R. 450; 21 An. 425.

In 5 An. 584 this court said: "We are of the opinion that the judgment, execution, and sheriff's return showing the adjudication are sufficient to prove the sale, without the deed. The adjudication and payment of the price are now, by express provisions of the Code of Practice, sufficient to transfer the property. The sheriff's deed is an additional muniment of title to the purchaser, but the defendant's rights were entirely divested by the judgment, the execution, and adjudication.

When we consider that, at the date of the sheriff's sale, the acknowledged mortgage and the taxes affecting said property amounted, including interest, to about eight thousand dollars; when we consider that said property is worth but thirty-four hundred dollars, the price which Mrs. Mortimer paid for it; that since the sale plaintiff, though enjoying possession of the property, has allowed it to be offered for sale for taxes, and that defendant's agent has again been compelled to pay that tax; that even if we were to annul the sheriff's sale no possible advantage could thereby accrue to plaintiff or his creditors; and that, under all circumstances, the property itself or its price would inevitably return to Mrs. Mortimer and the holder of the other note of the eighth of March, 1869, we can but conclude that it would be as gross as frivolous an injustice to prolong a litigation as fruitless to the debtor as expensive to the creditor.

There is no reason to disturb the judgment of the lower court.

It is therefore ordered, adjudged, and decreed that said judgment be and it is hereby affirmed at the costs of plaintiff.