Mr. Justice BRADLEY
 

 delivered the opihion of the court.
 

 As the bill in this case is a collateral proceeding to set aside the sale, mere errors and irregularities in the original proceeding will not suffice. It must be shown that the court had no jurisdiction. We had occasion, recently, in the case of
 
 Cooper
 
 v.
 
 Reynolds,
 

 *
 

 which came from the same district as this casé, and also arose upon an attachment, to examine this question, and it is unnecessary to repeat what was then said. The question is, did the court acquire jurisdiction of the case ? It is not denied that it has general jurisdiction of attachments in such cases. The code expressly says, that any person may sue out an attachment in the Chancery Court, upon debts or demands of a purely legal nature, except causes of action founded on torts, whenever the amount in controversy is sufficient to give the court jurisdiction.
 
 †
 
 Fifty dollars gives the court jurisdiction, and the amount here is over §300. The judge below, in his decree, relies on the want of a suf
 
 *588
 
 ficient affidavit. We have compared the affidavit with the requirements of the statute, in the light of the cases cited by the appellee’s counsel, and we see in it no defect which should make the proceedings null and void. True, it does not say that the debt is a
 
 just
 
 claim; but it states the amount of the debt, and that it is on the defendant’s note or bond, a copy of which is appended, showing that it was made under the defendant’s seal, and contained a promise to pay to the complainant or order three hundred dollars, six months after date, for value received, with interest from date. This is a particularity beyond the requirement of the statute, and more than compensates for the omission of the statement that it was a just claim. The dictum of Judge McKinney, in 11th Humphrey, 545, so often quoted, that “ it should be stated in the affidavit, and alleged in the attachment, that a suit has been commenced by the plaintiff against the defendant, the nature thereof, the tribunal in which it is depending, the amount of damages laid in the action, and that the cause of action stated is just,” relates to an ancillary attachment in a suit brought for an unliquidated demand, and is suggested by him as a sufficient affidavit in such cases, in which it is impossible for the plaintiff to swear (as he can do in debt) to the precise amount due. In this case the complainant not only swears to the amount due, but exhibits a copy of the defendant’s bond or note, under seal, in effect admitting the debt and promising to pay it. We cannot believe that the courts of Tennessee would hold such an affidavit defective even, much less so absolutely void as to vitiate all the subsequent proceedings.
 

 The writ of attachment appears to be in due form and to have been regularly served on the property; so that the court became fully possessed of jurisdiction over the case. Our attention has not been called to any other defect in the proceedings that amounts to anything more than a mere irregularity, unless the points next to be considered should be regarded as doing so.
 

 First. It is averred by Ramsey in his bill in the present suit that at the time when the attachment was sued'out, and
 
 *589
 
 when the publication was made in the newspaper at Knoxville notifying him to appear and defend the original suit, or that judgment would be taken
 
 pro confesso
 
 against him, he was in no situation to see or know of such publication, and he makes various allegations in confirmation of that statement, that he was in the country held by Confederate troops, &c.
 
 *
 

 On these allegations the question arises, Why was the complainant in the country held by Confederate troops? Why could he not return to Knoxville? Why could he not have communication with that place ? It was his place of residence. He says that he left Knoxville a short time before the Federal troops arrived. Why did he leave ? Was he forced to leave, and was his return forbidden ? Could he not have returned at any moment by submitting to the authority of the United States ? Was not his absence a voluntary one ? The order of publication was made at the January rules, 1864. President Lincoln’s proclamation of amnesty was issued on the 8th of December previous, offering pardon and amnesty to all persons who would take the oath of allegiance. Then what obstacle existed to prevent the complainant’s return? The causes alleged were certainly insufficient.
 

 This ease differs from that of
 
 Dean
 
 v. Nelson, decided at the present term. In that case Nelson and his wife were driven out of Memphis by a military order and were not permitted to return, and the proceedings to foreclose their property took place during their enforced absence. The other defendant, May, was only nominally interested, and had always been within the Confederate lines. But if, as in this case, a party voluntarily leaves his country or his residence for the purpose of engaging in hostilities against the former, he cannot be permitted to complain of legal proceedings regularly prosecuted against him as an absentee, on the ground of his inability to return or to hold communication with the place where the proceedings are conducted. That would be carrying the privilege of
 
 contra non valentem
 
 
 *590
 
 to an unreasonable extent. We think it cannot be set up in this case.
 

 In the next place, it is alleged that the jurisdiction of the Chancery Court was displaced by proceedings to confiscate the property in the District Court of the United States, and a seizure made for that purpose, by order of the district attorney, on the 21st of September, 1864. No record or transcript of the alleged proceedings in the District Court was given in evidence in this suit; at least, none appears in the record before us. It is conceded that no confiscation took place. Ludlow, the respondent below, the appellant here, admits that proceedings were commenced by information filed October-10th, 1864; but states and shows that Cynthia S. White intervened to protect her interest and insist on her prior levy, made almost a year before the seizure in behalf of the United States; that Ramsey pleaded the President’s pardon, and thus obtained a release of his property and an eud of the confiscation proceedings; and that a writ of possession was afterwards awarded by the Chancery Court on the application of Ludlow, and possession was delivered to him accordingly in execution of the decree of said court. It is said that these proceedings were in contempt of the District Court. Though that be so, the matter is not before us, and we cannot adjudicate upon it. If the United States authorities had the right to seize the property, and take it out of the hands of the law, as a preliminary step to proceedings for confiscation, it would nevertheless seem to be the right of the Chancery Court to reassume possession when the confiscation proceedings failed and came to an end. And though the writ of possession awarded by that court may have been irregularly issued (which it is not necessary for us to decide), Ludlow, the purchaser of the chancery title, was in fact put in possession, and as between him and Ramsey, he has the better title. An ineffectual attempt at confiscation, supervening upon the chancery proceedings, cannot deprive those proceedings of legal validity.
 

 Decree reversed.
 

 *
 

 10 Wallace, 308.
 

 †
 

 §
 
 3461.
 

 *
 

 See supra, p. 584. — Rep.