WINCHESTER HALL

*v.*

THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

LIMITATION—*opening decree by default—effect of the late civil war.* Where a resident of this State, after the commencement of the late civil war, voluntarily went to reside within the Confederate States, and afterwards enlisted as a soldier in the confederate army, but for which, he might have returned to this State within three years after the rendition of a decree of foreclosure against him under which his property was sold, it was *held*, that the time allowed for appearing and defending in such case, being three years, could not be extended in his favor.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

On January 16, 1859, Winchester Hall borrowed of the Connecticut Mutual Life Insurance Company the sum of $8000, to be paid in five years, with ten per cent per annum interest, payable semi-annually, to secure the payment of which loan, Hall and his wife gave a mortgage, with power of sale, on certain premises in the city of Chicago. Hall having failed to pay certain installments of the interest, and the company, having elected, in accordance with the terms of the mortgage, to declare the entire principal due, on March 31, 1862, filed a bill in chancery to foreclose the mortgage.

Hall was only constructively notified of the pendency of the suit, by publication of notice in a newspaper. August 4, 1862, a decree of foreclosure *pro confesso* was entered, and on September 15, 1862, the mortgaged premises were sold under the decree to the complainants in the bill for the satisfaction of the mortgage debt.

On November 13, 1867, Hall filed his petition to open the decree, and to be heard touching the matter, and be permitted to appear and answer the bill of foreclosure under the 15th section of the Chancery act, which authorizes such proceeding within three years after such a decree. In excuse for not sooner filing the petition, within the three years, the petition alleges that at the time of filing said bill, and ever since, the petitioner and his wife were inhabitants and residents of Louisiana; that the late war of the rebellion was in existence from July 13, 1861, to June 13, 1865; that he had no knowledge of the rendition of the decree until within a few months of filing the petition, and that three years had not elapsed since the close of the war. Answer and replication thereto were filed, and on final hearing the court below rendered a decree dismissing the petition, from which Hall appealed.

The record discloses this state of facts: That formerly Hall was engaged in the practice of law, in partnership with one Bush, at Thibodaux, the county seat of the parish of Lafourche, in the State of Louisiana, whence he removed to Chicago, in 1855, and there resided until the spring of 1861. In April in that year, in pursuance of an arrangement made through a previous correspondence with his former partner, Bush, he left Chicago for Thibodaux, for the purpose of resuming the practice of law at the latter place in partnership with Bush. Hall states that he left Chicago on the Thursday evening next after the fall of Fort Sumter, which would have been the 18th of April, 1861; that he reached New Orleans the following Saturday, and reached Thibodaux on the following Monday or Tuesday. In July, 1861, he came up to Louisville,

Kentucky, for his family, and returned with them, in August, to Thibodaux, and remained there until March, 1862, when he joined the confederate army as a volunteer, and served in that army until the close of the war. He then returned to Thibodaux, and there continued to remain until December, 1867, when he again removed to Chicago. Thibodaux came into possession of the United States forces in October, 1862, and continued in their possession until the close of the war, with the exception of a few weeks in June and July, 1863. Thibodaux was some sixty miles from New Orleans, and communication therewith was kept open from the former place while held by the Union forces. By the President's proclamation of non-intercourse, of date August 16, 1861, among other places excepted, were such parts of States "as may be from time to time occupied and controlled by forces of the United States engaged in the dispersion of said insurgents." By proclamation of date January 1, 1863, in regard to the slaves who were to become free, the President, in designating the States then in rebellion, names Louisiana, (except the parishes of Lafourche, Terrebonne, etc.) In the fall of 1863, Hall was in Thibodaux as a paroled prisoner.

At the time when Hall left Chicago, there were two or three semi-annual payments of interest in arrear, and, as testified, the property was not considered worth the mortgage debt.

Mr. C. M. HARRIS, for the appellant.

Mr. JOHN BORDEN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The case here presented is one of a voluntary removal from this State after the commencement of the late war of the rebellion, and taking up a residence in one of the rebellious States. Before the petitioner left Chicago, it is matter of history that Louisiana had passed its ordinance of secession,

the so-called confederate government had been set up and its president elected, and actual hostilities had been commenced. In *The Protector*, 12 Wallace, 700, it was decided, as affecting the operation of statutes of limitation, that the war began April 19, 1861, in Louisiana.

Assuming that as against a resident of one of the rebellious States at the time the war commenced, the same rule should apply in regard to the three years allowed for presenting this petition, as has been adopted with respect to the Statute of Limitations, viz: that the period of the war should not be counted as a part of the three years, we can not think that the rule should apply to such a case as the one here presented. And for the reason that the alleged disability was the voluntary, wrongful creation of the party himself. He withdrew himself from a liability here for the support of the war, and cast in his lot with the insurgent side, where he had opportunity, and was exposed to liability, to make contribution in support of the hostilities which were being carried on against the government.

He added one more to the enemies of the government, as, in a war between two governments, all the subjects of the one are enemies to all the subjects of the other. If by such action of removal he could suspend the enforcement of the collection of debts due to our own citizens, out of his property here, he might to that extent impair the resources which might be needed for the prosecution of the war.

From October, 1862, when the United States forces took possession of Thibodaux, at any time thereafter, save about a month's time, the petitioner, had he remained at peace in Thibodaux, might, without obstruction, have had access to the court here, and protected, if need there had been, his interest in the suit.

It is an anomalous excuse to offer in a court of justice, for not doing so, that he was voluntarily away, engaged in warfare for the destruction of the government. "The duty of a citizen when war breaks out," say the Supreme Court of the

United States, "if it be a foreign war, and he is abroad, is to return without delay ; and if it be a civil war, and he is a resident in the rebellious section, he should leave it as soon as practicable and adhere to the regular established government." *The William Bagley,* 5 Wall. 408.

The appellant's conduct was in manifest contravention of his duty as here indicated, and can not be made the basis of any claim of right or of favor. It would be against all the analogies of the law. In *Ludlow* v. *Ramsey,* 11 Wall. 589, the same court states the doctrine as follows : " But if, as in this case, a party voluntarily leaves his country or his residence for the purpose of engaging in hostilities against the former, he can not be permitted to complain of legal proceedings against him as an absentee on the ground of his inability to return or to hold communication with the place where the proceedings are conducted." And although the removal by appellant from Chicago to Thibodaux might not have been for the purpose of engaging in the then existing hostilities against the government, we do not consider that that circumstance should exclude the application of the principle to the present case. As this court said, in reference to the same question, in *O'Neal* v. *Boone,* 53 Ill. 38, " But what ever his motive or his business, his act was purely voluntary, and that consideration disposes of his claim that the Statute of Limitations ceased to run." And see *Harper* v. *Ely et al.* 56 Ill. 179.

We are of the opinion that the court below properly dismissed the petition, as not having been filed within three years after the decree, as required by the statute, and no sufficient cause shown to take the case out of the operation of the requirement of the statute.

*Decree affirmed.*