COWDEN et al. (WOOG, Intervener) v. WILD GOOSE MINING & TRADING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,096.

1. CORPORATIONS (§ 507*) — MANAGING AGENT — AUTHORITY — ESTOPPEL TO DENY.

Suits having been brought against a corporation, and service being made on G. who, it was subsequently claimed, had no authority to accept service, he appeared, answered, and nearly a year after stipulated for judgment, whereupon judgments were rendered for plaintiff in each action. An attachment had been levied on the property of the corporation, and after the entry of the judgments a receiver was appointed, and a stipulation entered into that, in consideration of a stay of execution until April 1, 1908, no steps would be taken by the corporation or the receiver to disturb the judgments. This agreement having been carried out, executions were levied, and the property sold. *Held*, that both the receiver and the corporation were estopped in equity to claim that G. was not authorized to accept service or to represent it in the litigation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1974–2000; Dec. Dig. § 507.*]

2. EXECUTION (§ 242*)—SALE—CONFIRMATION—EFFECT.

Confirmation of an execution sale of property cures all irregularities in the proceedings leading up to or in the conduct of the sale, which thereafter will only be set aside for fraud, mistake, or surprise.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 669–672; Dec. Dig. § 242.*]

3. RECEIVERS (§ 77*)—ATTACHMENT—LIEN—DIVESTMENT.

Carter's Ann. Code Civ. Proc. Alaska, § 141, provides that from the date of an attachment, until it is discharged or the writ executed, the

plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property attached, real and personal. *Held* that, where a receiver was appointed for a corporation after its property had been attached in an action to which the plaintiffs in the attachment were not parties, such appointment did not divest the attachment liens.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 138–144; Dec. Dig. § 77.*]

**4.** RECEIVERS (§ 128*)—RECEIVERS' CERTIFICATES—LIEN.

Where property of a private corporation engaged in mining and trading was attached, and thereafter a receiver was appointed, who was authorized to issue receiver's certificates, the lien thereof was not superior to the attachment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 219–222; Dec. Dig. § 128.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

Suit by F. R. Cowden and others (Charles Woog, intervener) against the Wild Goose Mining & Trading Company and others. Judgment for defendants, and plaintiffs and intervener appeal. Affirmed.

The court below sustained demurrers interposed to the complaint, cross-complaint, and complaint in intervention, and dismissed the action; the plaintiffs, cross-complainants, and intervener declining to amend. The appeal is from the judgment of dismissal. The plaintiffs and the intervener sued as holders of certain receiver's certificates issued by the receiver of the Campion Mining & Trading Company, which company, and the receiver of its property, Frank L. Blackman, were made defendants to the complaint, along with the Wild Goose Mining & Trading Company, Seward Ditch Company, Albert Fink, as trustee, John L. Beau, Beau Mercantile Company, F. H. Herhold, B. Niggemeyer, C. B. Greeley, C. S. Hannum, and Thomas C. Powell, as United States marshal for the Second division of the district of Alaska.

The complaint alleged, among other things: That Blackman was, in a suit brought in the court below by Charles W. Chase et al. against the Campion Mining & Trading Company, appointed receiver of its property, and since August 13, 1907, has been the duly appointed, qualified, and acting receiver of such property. That the defendant Beau was the president of the Beau Mercantile Company, a corporation, and one of the stockholders of the Seward Ditch Company, also a corporation. That the defendant Hannum was the attorney of Beau and of the Beau Mercantile Company, and that the defendant Fink was the attorney of the defendants Wild Goose Mining & Trading Company and Seward Ditch Company, both of them being corporations. That the Campion Mining & Trading Company was, and still is, the owner of waters and water rights at and near the headwaters of Nome river, in Alaska, of the value of more than $200,000. That during all of the times mentioned in the complaint one Thomas A. Campion was, and still is, the only authorized agent of the Campion Mining & Trading Company in the district of Alaska upon whom process binding that corporation could legally be served, notice of whose appointment as such was, and still is, of record with the clerk of the court below. That at the times of the alleged fraudulent transactions complained of the defendant Niggemeyer was secretary and treasurer and a director and stockholder of the Beau Mercantile Company, according to the plaintiffs' information and belief. That during the summer of 1905 Niggemeyer, pretending and claiming to be the manager and attorney in fact of the Campion Mining & Trading Company, but in fact having no such authority, executed in the name of that company, as its manager and attorney in fact, a promissory note for the principal sum of $5,037.83 in favor of the Alaska Banking & Safe Deposit Company, which note Beau indorsed before delivery, and that about the same time Niggemeyer "undertook

to create a certain indebtedness against the said Campion Mining & Trading Company" in favor of the Beau Mercantile Company by giving a similar note to it in part, and in part for merchandise account, aggregating $5,022.75. That the indebtedness so attempted to be incurred was without authority, and not binding upon the Campion Mining & Trading Company. That on or about August 18, 1906, the Beau Mercantile Company commenced two actions in the court below, numbered, respectively, 1,570 and 1,573, and that Beau commenced another action in the same court, numbered 1,571, against the Campion Mining & Trading Company, which actions were based upon the said notes and mercantile accounts, in each of which actions summons was duly issued and served upon one William A. Gilmore as the agent of the Campion Mining & Trading Company, but that Gilmore was not then, and at no time was, "a duly appointed agent of the said Campion Mining & Trading Company, upon whom process could be served so as to bind said company, or give the court jurisdiction over the person of said company or its properties." That nevertheless Gilmore entered a general appearance and a pleading for the Campion Mining & Trading Company in each of the said actions. That thereafter the court, "in pursuance of unauthorized stipulations made and entered in said company's name in said causes, and in its behalf, but without any authority vested in the said William A. Gilmore so to do, on or about the 2d day of July, 1907, rendered and entered a purported judgment in each of said actions" in favor of the respective plaintiffs and against the Campion Mining & Trading Company, as follows: In case 1,570, for $2,562.70, including costs; in case 1,571, for $5,588.73, including costs; and in case 1,573, for $3,178.55, including costs—all of which judgments the complaint alleged were void. "That on or about the 12th day of September, 1907, the said John L. Beau, Campion Mining & Trading Company, and Frank L. Blackman, receiver aforesaid, made and entered into a purported stipulation in said cases Nos. 1,570, 1,571, and 1,573 aforesaid, wherein it was agreed by and between the parties to said actions that, in consideration of the said Campion Mining & Trading Company and its said receiver failing to take any action whatever to open up and set aside said void judgments, the said John L. Beau and the said Beau Mercantile Company in said actions would stay execution on said judgments until the 1st day of April, 1908, and the said Campion Mining & Trading Company and its said receiver, in consideration of the staying of said executions on said judgments and refraining from making a sale under said executions until the said 1st day of April, 1908, would not at any time after the making of said stipulation seek in any way to disturb said judgments, or to interpose any defense to the cause of action upon which said judgments were recovered, or to, after said 1st day of April, 1908, resist the issuance of an alias execution, and a levy and sale under said void judgments, and that by virtue of said stipulation in said causes the said John L. Beau, Beau Mercantile Company, Campion Mining & Trading Company, and its said receiver, Blackman, pretended to validate said void judgments and ratify the same under said stipulation; but that plaintiff alleges that the attempted ratification of said void judgments was null and void, and said stipulation was entered into by and between said receiver while still acting as such, without any authority or order of this court first had and obtained to enter into said stipulation attempting to validate said void judgments, and that said stipulation and agreement was, ever since has been, and still is an unconscionable stipulation under its terms so made and entered into by and on behalf of said Campion Mining & Trading Company and its said receiver, without authority and under such circumstances and surroundings as to in truth and in fact constitute coercion on behalf of the said John L. Beau and the Beau Mercantile Company."

The complaint also alleges that the plaintiff Cowden is the holder of a receiver's certificate issued by Blackman under an order of the court in the suit of Chase et al. against the Campion Mining & Trading Company, numbered 1,572, authorizing receiver's certificates to be issued therein; that on July 27, 1908, the respective plaintiffs in the actions numbered 1,570, 1,571, and 1,573 caused alias executions therein to be issued to the United States marshal for the district of Alaska and that the marshal thereafter levied the executions upon certain properties of the Campion Mining & Trading Com-

pany described in the complaint and constituting its principal assets; that subsequently, to wit, August 28, 1908, the marshal, by virtue of the execution in case 1,570, sold the property levied upon to the Beau Mercantile Company for the sum of $3,408.91, and at the same time and place, under execution issued in case 1,571, the marshal sold the same property to John L. Beau for $7,536.06, and at the same time and place, under execution issued in case 1,573, the marshal sold that portion of the same property constituting the realty to the Beau Mercantile Company for $1,078.88, and on the 9th day of September, 1908, sold the personal property levied upon to one Talleson for $265, which personal property was a part of the property sold under executions issued in actions 1,570 and 1,571; that on the 9th day of September, 1908, each of the said sales in actions numbered 1,570 and 1,571, and on the 9th day of October, 1908, the sale under the execution issued in action 1,573, were confirmed by orders of the court therein entered.

The complaint also alleges that at all the times therein mentioned the Campion Mining & Trading Company was the owner of waters and water rights and real and personal property in Alaska, unincumbered and to the value of more than $200,000; that on or about April 22, 1905, that company entered into a written agreement with the Seward Ditch Company, containing covenants running with the land of the Seward Ditch Company, under which agreement the latter became indebted to the Campion Mining & Trading Company in the sum of $75,000, which has never been paid; that on or about October 9, 1906, a purported cancellation and release of that agreement was executed in the name of the Campion Mining & Trading Company, and delivered to the Seward Ditch Company, and that on the same day a purported mortgage covering substantially its entire assets was executed in the name of the Campion Mining & Trading Company, and delivered to the Seward Ditch Company, to secure the payment to the latter of the sum of $24,000; that on August 2, 1907, the receiver of the Campion Mining & Trading Company, under authority of the court, brought an action to obtain a decree annulling the purported instrument of cancellation and release, and reinstating the agreement, and for a judgment against the Seward Ditch Company for the amount due under the agreement between the two companies, which action is pending and undetermined; that in 1907 the Seward Ditch Company executed to the defendant Albert Fink as trustee a deed of trust covering all of its property as security for the payment of notes aggregating $200,000 and any other notes that it might make held by the Nome Bank & Trust Company; that after the said trustee had commenced to advertise the properties of the Seward Ditch Company for sale under the provisions of the deed of trust, and before the time set for such sale, the receiver of the Campion Mining & Trading Company, under authority of the court, commenced an action to enjoin such sale and for a money judgment against the Seward Ditch Company; and that in that action the court denied a motion for an injunction pendente lite, but that the action still remains pending and undetermined, and that thereafter, in 1909, Fink sold all of the properties and assets of the Seward Ditch Company, embraced in the deed of trust, to the defendant Wild Goose Mining & Trading Company.

West & De Journel, of San Francisco, Cal., and George D. Schofield, of Nome, Alaska (Joseph T. Curley, of San Francisco, Cal., of counsel), for appellants.

Gordon Hall, Albert Fink, and Thomas R. White, all of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The intervener holds a receiver's certificate similar to that held by the plaintiff Cowden, and seeks similar relief, and upon the same grounds. They therefore occupy precisely the same position.

[1] The plaintiffs contend that the judgments in cases numbered

1,570, 1,571, and 1,573 are void, on the ground of fraud in the indebtedness upon which they were founded, and because of lack of service of process therein upon an accredited agent of the Campion Mining & Trading Company. The service, as has been seen, was made upon one William A. Gilmore, who pretended to be the agent and representative of the company, and who filed general appearances and pleadings for it in those cases. The complaint shows that service was made on Gilmore on the 18th of August, 1906, and that he appeared and pleaded in due time, and that it was not until July 2, 1907—nearly one year thereafter—that the judgments were entered. Not only is there no allegation in the complaint that the Campion Mining & Trading Company did not know of the bringing of those actions and of the proceedings therein, but this allegation in the complaint affirmatively shows that that company did have such knowledge:

"Plaintiff further alleges that said properties so levied upon, as hereinafter alleged, had been attached by the marshal at or about the time of the bringing of said actions, by force of writs of attachment issued in said actions respectively to him, and said alias executions were levied upon the same properties so previously attached."

Notwithstanding such knowledge, neither the company nor the receiver of its property made any application to the court in which the actions were pending to set aside the service, or in any way question Gilmore's authority. Moreover, neither the company nor the receiver, in their cross-complaint, questioned the fact or the good faith of the stipulation entered into by them with the plaintiffs in actions 1,570, 1,571, and 1,573, referred to in the above statement of the case, whereby they agreed that no action would be taken to set aside those judgments for defective service of summons or for any other cause, and in effect ratifying and confirming them. On the contrary, in their answer to the complaint they expressly—

"admit that the stipulation therein set forth was made and entered into on their part as therein alleged; but they allege that said stipulation was never intended to bar and did not bar these defendants from contesting the legality of such execution sales as might be made under alias executions to be issued for the satisfaction of said judgments, upon the ground of any irregularity in such sales. And these defendants further allege that at the time when said stipulations were entered into on their part this defendant corporation was without any moneys or other valuable resources whatever wherewith to satisfy or compromise said judgments, or to contest the validity thereof, and this defendant receiver was without any moneys or other resources available for that purpose, and that, being so situated, they entered into said stipulation under compulsion of circumstances, and that the same was the best and only accommodation or arrangement which was offered to them on the part of the judgment creditors in said judgments respectively."

Under such circumstances, neither the company nor its receiver should be heard to say in a court of equity that Gilmore did not have the authority claimed. Denton v. Baker, 93 Fed. 46, 35 C. C. A. 187; Mass. Benefit Life Ass'n v. Lohmiller et al., 74 Fed. 23, 20 C. C. A. 274, and cases there cited. Besides, while the complaint alleges that the receiver was not authorized to enter into the

stipulation, it contains no allegation that the Campion Mining & Trading Company was itself unauthorized to enter into it, but, on the contrary, expressly alleges that it did do so.

Both the plaintiffs and cross-complainants by their pleadings concede the fact that under and by virtue of the stipulation the Campion Mining & Trading Company and the receiver of its property received a valuable consideration. Both are therefore estopped to deny the validity of the judgments. There is no allegation that they did not have actual knowledge of the sale of the property of the company under the executions; and that they had at least constructive notice is shown by the fact that by the statutes of Alaska a writ of attachment can only be levied upon real property by posting notice on the ground and recording in the office of the recorder of the district in which the property is situated a certificate to the effect that the property, describing it, has been attached in the action in which the writ issued, which proceedings may be followed by execution sale under prescribed notice.

[2] The irregularities which occurred in the making of the sales in question under the executions which are complained of were cured by the confirmation of the sales by the court. In Heid v. Ebner, 133 Fed. 156, 66 C. C. A. 222, this court said:

"It is the general rule in the United States that the confirmation of a judicial sale by a court of competent jurisdiction cures all irregularities in the proceedings leading up to or in the conduct of the sale, and that while such a sale will be set aside where fraud, mistake, or surprise is shown, mere irregularities in the preliminary proceedings do not render the sale invalid, and will not suffice to set it aside after confirmation. Wills v. Chandler (C. C.) 2 Fed. 273; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Ludlow v. Ramsey, 11 Wall. 581, 20 L. Ed. 216; Stockmeyer v. Tobin, 139 U. S. 176, 11 Sup. Ct. 504, 35 L. Ed. 123. The laws of Alaska are in accord with this general rule. Section 283 of Carter's Codes of Alaska, pt. 4, provides, in subdivision 4 (Act June 6, 1900, c. 786, 31 Stat. 379) thereof: 'An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons, in any other action or proceeding whatever.'"

[3] The laws of Alaska also provide that:

"From the date of the attachment until it be discharged or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith and for a valuable consideration of the property, real and personal, attached." Carter's Alaska Codes, p. 174.

As has been stated, the property sold under the executions in question was attached August 18, 1906, and the receiver was not appointed until August 13, 1907, and then in an action to which the plaintiffs in the. attachment cases were not parties. The mere appointment of the receiver, therefore, did not divest the liens acquired by the attachments. High on Receivers, § 440; People v. Finch, 19 Colo. App. 512, 76 Pac. 1120; Pease, Sheriff, v. Smith, Receiver, 63 Ill. App. 411.

[4] The contention on the part of the appellants that the holders of the receiver's certificates have a paramount lien upon all of the assets of the Campion Mining & Trading Company is endeav-

ored to be supported by a citation of the cases of Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895, Miltonberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, Union Trust Co. v. Illinois M. Railway Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, and Kneeland v. Luce & Co., 141 U. S. 491, 12 Sup. Ct. 32, 35 L. Ed. 830. All of those are cases of certificates issued by receivers of railroads, which, for special reasons many times stated and *covering a limited period only,* the courts sometimes prefer over other liens. The inapplicability of such cases to the present one is made manifest by the Supreme Court in Union Trust Co. v. Ill. M. R. Co., 117 U. S. at pages 455, 456, 6 Sup. Ct. at pages 820, 821 (29 L. Ed. 963), where it is said:

"Property subject to liens and claims and debts, of various characters and ranks, which is brought within the cognizance of a court of equity for administration, and conversion into money, and distribution, is a trust fund. It is to be preserved for those entitled to it. This must be done by the hands of the court, through officers. The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle, with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept; but, if perishable, it must be sold, by way of preservation. A railroad, and its appurtenances, is a peculiar species of property. Not only will its structures deteriorate and decay and perish, if not cared for and kept up, but its business and good will will pass away if it is not run and kept in good order. Moreover, a railroad is a matter of public concern. The franchises and rights of the corporation which constructed it were given, not merely for private gain to the corporators, but to furnish a public highway; and all persons who deal with the corporation as creditors or holders of its obligations must necessarily be held to do so in the view that if it falls into insolvency, and its affairs come into a court of equity for adjustment, involving the transfer of its franchises and property, by a sale, into other hands, to have the purposes of its creation still carried out, the court, while in charge of the property, has the power, and, under some circumstances, it may be its duty, to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public. Its power to do this does not depend on consent, nor on prior notice. Consent is desirable, but is seldom practicable, where the debts exceed the value of the property. Though prior notice to persons interested, by notifying them as parties, first requiring them to be made parties if they are not, is generally the better way, yet many circumstances may be judicially equivalent to prior notice. A full opportunity, as in this case, to be heard, on evidence, as to the propriety of the expenditures and of making them a first lien, is judicially equivalent. The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court, in regard to the loans. The court always retains control of the matter, its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments."

We are of the opinion that the demurrers were properly sustained by the court below, and its judgment is affirmed.