### In re SEWARD DREDGING CO.

#### Appeal of SANDS.

(Circuit Court of Appeals, Second Circuit. April 10, 1917.)

#### No. 219.

1. BANKRUPTCY ☞151—TITLE ACQUIRED BY TRUSTEE.

   Under Bankruptcy Act July 1, 1898, c. 541, § 47a (2), 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1916, § 9631), providing that trustees in bankruptcy, as to property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, trustees are not purchasers for value, nor have they the rights of creditors holding liens other than creditors of the bankrupt.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239.]

2. BANKRUPTCY ☞151—TITLE ACQUIRED BY TRUSTEE.

   Under Bankruptcy Act, § 47a (2), as amended by Act June 25, 1910, § 8, a trustee has the rights of the bankrupt, and the rights of a creditor holding a lien by legal or equitable proceedings, and, if these rights are antagonistic, he can take his choice.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 239.]

3. MINES AND MINERALS ☞56—AGREEMENTS FOR WORKING—NATURE.

   Under a contract between the owner of a placer mining claim and E., E. was to take possession of the mine, furnish machinery, and material to work it, and at the end of the first summer's work he was to have the option of continuing operations on a royalty basis; but, if he did not exercise this option, he was to be paid the difference between the cost of his plant and the cost of operation and the value of the gold obtained by him, whereupon all of his improvements on the property were to become and remain the property of the mine owners. *Held*, that this contract was not a conveyance, nor a lease, but a mere license.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 166.]

4. SALES ☞454—CONDITIONAL SALES—NATURE OF TRANSACTION.

   So much of the contract as provided the manner in which the mine owner was to become the owner of E.'s plant constituted an agreement for conditional sale, a system of transferring property unobjectionable at common law, and explicitly recognized by Uniform Sales Act Alaska (Sess. Laws 1913, c. 66) §§ 1, 20, providing that a contract to sell or a sale may be absolute or conditional, and that the seller may reserve the right of possession or property until certain conditions have been fulfilled, notwithstanding delivery to the buyer, or to a carrier or other bailee for transmission to the buyer.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1324, 1325, 1333, 1334.]

5. **SALES** ⬤⇒473(2)—**VENDOR AND PURCHASER** ⬤⇒233—**FAILURE TO RECORD IN-STRUMENT.**

Such contract, not being a conveyance, was not required to be recorded by Civ. Code Alaska, § 98, making conveyances of real property not filed for record void against subsequent purchasers in good faith, and, regarded as an agreement for conditional sale, it was not capable of being recorded; no statute requiring or permitting the recording thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1384; Vendor and Purchaser, Cent. Dig. §§ 563–566.]

6. **COURTS** ⬤⇒359—**FOLLOWING LOCAL LAW—CONSTRUCTION OF STATUTES ADOPTED FROM OTHER STATES.**

In construing the statutes of Alaska, transplanted from Oregon, the Oregon decisions, unless departed from by Alaska judgments, are to be considered as local law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949.]

7. **COURTS** ⬤⇒366(18)—**FOLLOWING STATE DECISIONS—LIENS.**

In matters of lien, the local law as shown by decisions, is controlling in federal courts, provided it can be ascertained with sufficient clearness from the decisions of the local courts of last resort; but otherwise the federal courts will form their own judgment.

8. **FIXTURES** ⬤⇒22—**CHATTELS SOLD CONDITIONALLY.**

A vendor by conditional sale, or other legal device for retaining title until payment is made, may, even under an agreement entirely lawful per se, permit his chattels to become so thoroughly a part of real property that they can no longer be severed therefrom, whereupon they become part of the realty.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 57.]

9. **FIXTURES** ⬤⇒22—**CHATTELS SOLD CONDITIONALLY.**

Where a combustion engine, bolted to a concrete bed, and other fixtures, forming part of mining plant and placed upon a mining claim under a contract amounting to a conditional sale, were easily removable by, at most, loosening certain bolts, and such removal would neither injure nor destroy the realty, nor destroy or necessarily injure the chattels, they were not a part of the realty, under Oregon decisions.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 57.]

10. **BANKRUPTCY** ⬤⇒140(1)—**PROPERTY VESTED IN TRUSTEE—PROPERTY CONDITIONALLY SOLD.**

Chattels, forming part of a mining plant, placed on a mining claim under a contract amounting to a conditional sale, and not so attached to the realty as to become a part thereof, did not pass to the trustee in bankruptcy of the mine owner, under Bankruptcy Act, § 47a (2), as amended by Act June 25, 1910, § 8, and Comp. Laws Alaska 1913, § 973, providing that an attachment creditor shall be deemed a purchaser in good faith and for valuable consideration, as one attaching all the property of the mine owner could not have held such chattels.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Seward Dredging Company, bankrupt. On petition to revise an order granting a petition by one Estabrook for delivery of certain chattels to him. Order affirmed.

The bankrupt owned a placer mining property in Alaska. This will be assumed to be real estate, for purposes of decision, a holding not to be complained of by appellant, who takes the point for granted. A written contract was made by bankrupt with one Estabrook, to the effect (so far as material) that Estabrook should "take possession" of the mine, furnish machinery and

material to work it, and himself extract gold, keeping careful accounts of expenses and receipts. At the end of the first summer's work, Estabrook was to have the right or option of enlarging and continuing his operations on a royalty basis; but, if he did not find the enterprise to his liking, the contract was then to terminate, and accounts between the contracting parties were to be stated in the following manner: The actual cost of installation of mining plant, plus cost of operation for the summer or mining season, should be credited to Estabrook, and the gold recovered by Estabrook should be credited to the bankrupt. If the balance was against Estabrook, he was to pay the same to the bankrupt; but if the value of the gold was less than cost of plant and operation, the bankrupt was to pay Estabrook the difference, "and thereupon all of said improvements shall become and remain the property of" the Seward Dredging Company.

Estabrook did not exercise his option, the gold recovered during the first experimental season (1914) did not equal Estabrook's expenditure by over $25,000, and that difference the Seward Company never paid. It did, however, resume possession of its mine before bankruptcy, and Estabrook did not remove therefrom his machinery, etc., which passed into the physical possession of the trustee, and therefore into the "custody of the bankruptcy court." A large part of Estabrook's plant consisted of chattels, of which only one need be specified, an oil-burning combustion engine of considerable size, used for driving a generator, a machine which was shipped to the remote and difficult region of the mine in small parts, there assembled, and bolted to a concrete bed, contained within a house, of a very rough and cheap construction. The trustee in bankruptcy having refused to surrender any of Estabrook's apparatus, he filed petition to compel delivery to him of the chattels, which (or whose value) are the subject of this appeal. If he is entitled to the engine, it is too plain for argument that his right extends to all he has demanded.

The District Court granted Estabrook's petition. From an order to that effect the trustee appeals.

H. L. Brown, of New York City (John W. H. Crim, of New York City, of counsel), for trustee.

Nathan A. Smyth, of New York City, for claimant.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The position strenuously maintained by the trustee rests on a combination of sundry legal elements of no very apparent relation to each other, viz.: (1) The amendment of 1910 to section 47a (2) of the Bankruptcy Act; (2) an Alaska statute regulating attachments; (3) an assumption that the agreement with Estabrook was a conveyance of some interest in land, and therefore real estate; (4) the Alaska recording acts; and (5) dependence on decisions of the Supreme Court of Oregon, in respect of statutes adopted from that state by Alaska.

[1, 2] 1. Before the amendment of 1910 a bankruptcy trustee (so far as section 47a (2) was concerned) merely stood in the shoes of the bankrupt. He was not a purchaser for value (Zartman v. First National Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418), any more than an assignee for the benefit of creditors (In re Goodwin, etc., Co.'s Estate, 166 Pa. at 299, 31 Atl. 91). By the amendment in question his powers were enlarged (so far as here material) thus:

"Such trustees as to all property in the custody or coming into the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon."

It appears to be thought that the amendment has made trustees "purchasers for value" as to some or all of the property peacefully coming into their possession. This is not true; the rights of a creditor with a lien have been superadded, but such rights are wholly different from those of a purchaser for value. Since 1910 a trustee has two rights as to property in his custody; i. e., that of the bankrupt and that of such a creditor as is described. They are different rights, sometimes antagonistic; the trustee can take his choice. Further, it is plain that, when speaking of a "creditor," Congress means a creditor of the bankrupt; it is impossible that any trustee could exercise the power or right of any creditor of any person, who (e. g.) might lawfully establish a lien upon property fortuitously coming into the court's custody. In this case the trustee, having surveyed the list of possible creditors of the bankrupt, capable of exercising legal or equitable proceedings, has chosen the position of an attaching creditor as being most favorable to his contentions. We assume that he has this right. Bailey v. Baker, etc., Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275; Interstate Banking, etc., Co. v. Brown, 235 Fed. 32, 148 C. C. A. 526.

2. Compiled Laws Alaska (1912) § 973, provide that "from the date of the attachment" the plaintiff therein "shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached." See Cowden v. Wild Goose Trading Co., 199 Fed. 561, 118 C. C. A. 35. We assume that the trustee is (since the chattels here in question were situate in Alaska) entitled to all the rights that would have accrued to him, had he (as a creditor of Seward Dredging Company) laid an attachment upon said chattels, under the quoted Alaska statute, on the day the bankruptcy petition was filed. Bailey v. Baker, etc., Co., supra.

[3, 4] 3. It is not true that the contract between Estabrook and the bankrupt was a conveyance in the sense that it transferred anything that could be called realty or constituted a lease. An agreement exactly similar in legal effect was held not a lease, and no more than a contract for labor to be performed, merely fixing compensation for services rendered, in Hudepohl v. Mining, etc., Co., 80 Cal. 553, 22 Pac. 339, in which case the document considered was called a lease by the parties, a fact taken into consideration merely as evidence of ignorance. There, as here, the contractor was formally given possession of the mine, a fact which made him no more than a licensee.

In the present instance, however, the contract went further, and provided for the manner in which (in the situation that actually arose) the bankrupt was to become the owner of the chattels in question. We regard this portion of the contract as constituting a plain agreement for conditional sale—a system of transferring property unobjectionable at common law (Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828), and explicitly recognized by the Uniform Sales Act (sections 1 and 20), which became law in Alaska as chapter 66 of the Session Laws of 1913.

It results, from the matters thus far treated, that the trustee herein can only prevail, if a creditor of the bankrupt, under Alaska law,

would have prevailed, by virtue of an attachment levied on the day of petition filed upon personal property, situate on bankrupt's premises, but belonging to Estabrook.

[5] 4. The recording acts of Alaska provide that:

"Every conveyance of real property * * * not * * * filed for record * * * shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded." Section 98, Civ. Code.

It is urged (a) that the "conveyance" (i. e., the contract with Estabrook) should have been recorded, if the rights therein established as between bankrupt and Estabrook are to be good as against the trustee; and (b) that the recording act, since it uses the same phraseology, is to be read in connection with the attachment statute. The first proposition is unsound, because (as above stated) the contract was not a conveyance; while regarded as an agreement for conditional sale, it was not capable of record, in that the territorial statutes did not require or permit the same. As to the second suggestion, we are quite unable to perceive any connection between the recording acts and the attachment statute, unless an attachment affects real estate; and the attached chattels are to be regarded as part of the realty,—a point considered hereafter.[1]

[6, 7] 5. It is urged that the local acts above referred to must be construed in the light of the jurisprudence of Oregon, the state from which they were transplanted. As a general principle this is true. Capitol Traction Co. v. Hof, 174 U. S. at 37, 19 Sup. Ct. 580, 43 L. Ed. 873; Love v. Pavlovich, 222 Fed. 843, 138 C. C. A. 268. This means that Oregon decisions, unless departed from by Alaska judgments, are to be considered as local law, and such law (in matters of lien) is determinative of the case, provided that it "can be ascertained with sufficient clearness from the decisions of (local) courts of last resort, otherwise, we shall form our own judgment." Triumph, etc., Co. v. Patterson, 211 Fed. 249, 127 C. C. A. 617.

The Oregon rulings to which we are referred, of which Muir v. Jones, 23 Or. 332, 31 Pac. 646, 19 L. R. A. 441, Landigan v. Mayer, 32 Or. 245, 51 Pac. 649, 67 Am. St. Rep. 521, Herschberger v. Johnson, 37 Or. 109, 60 Pac. 838, and Washburn v. Intermountain, etc., Co., 56 Or. 578, 109 Pac. 382, Ann. Cas. 1912C, 357, are examples, all deal with the conflicting claims of grantees and mortgagees of real estate or mechanics lienors as against those claiming as personalty "affixed" or "annexed" chattels; i. e., chattels whose character had "changed to realty by being affixed to the soil."

The argument, then, comes to this—that these chattels (e. g., the combustion engine) were so affixed to the realty or annexed thereto as to become part thereof, a familiar subject of discussion with which (un-

[1] The Compiled Laws of Alaska define "real and personal property" (section 607): Real property "includes all lands, tenements and hereditaments and rights thereto and all interest therein whether in fee simple or for the life of another." Personal property "includes all goods and chattels, money, credits and effects of whatever nature not included in the term 'real property.'"

der the facts of this case) we think neither the recording act nor the attachment statute has any legitimate connection.

[8] In every jurisdiction it is possible that the vendor by conditional sale or other legal device for retaining title until payment made may, even under an agreement per se entirely lawful, permit his chattels to become so thoroughly a part of real property that they can no longer be severed therefrom, wherefore in common parlance they "become realty." Under exactly what circumstances this phrase is applicable the courts of different states are not agreed; and the trustee's only arguable position is that he acquired the chattels because he certainly received title to the bankrupt's realty, of which the chattels had become a part.

[9] We hold as a fact that the combustion engine, and a fortiori the other articles, were easily removable by (at the most) loosening certain bolts, and that such removal would neither have injured nor destroyed the realty nor destroyed nor necessarily injured the chattels. This being the case, the Oregon decisions do not impose upon them the character of realty. Herschberger v. Johnson, 37 Or. at 111, 60 Pac. 838. This holding is consistent with the only local decision on the subject—Mineral, etc., Co. v. Ramsey, 4 Alaska, 734. It is perhaps true that the trend of opinion in the Oregon decisions is more strongly against the removal or severability of chattels than is warranted by Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767, and Detroit, etc., Co. v. Sistersville, 233 U. S. 712, 34 Sup. Ct. 753, 58 L. Ed. 1166; but they go far enough for this case.

[10] Whether the law of fixtures (apart from any statute) is a matter as to which the federal courts are bound to follow local decisions is something on which no opinion is now given; it is at present sufficient that, if this trustee had been a creditor of the Seward Dredging Company, who had attached everything that said company had in Alaska, he could not have held Estabrook's property, because that property did not belong to the defendant in the attachment, and was not (within the decisions either of Oregon or Alaska) affixed to the real property of the defendant so as to become a part thereof.

The order appealed from is affirmed, with costs.